May it please the court, Theodore H. Frankford, the appellant of Dr. Darren McKinney, and I'd like to reserve five minutes for a rebuttal. I'd like to start with a hypothetical. Imagine a case, plaintiff v. defendant, and the defendant goes to the court and says, this motion to dismiss is really important to us, and what we'd like to do is, if you rule in favor for us on this motion to dismiss, we'll give $25,000 to a charity your spouse runs. I think if that happened, the judge would immediately call the U.S. attorney and ask for prosecution. But wouldn't you think that's your best argument? No, that's not my best argument. Okay. I'd like you to go with the best one. Which one do you think is your best, here? Well, the best one is this. I mean, we got a discretionary review on the argument where you're going, and I guess whether there was an omission and all that, but is that where you're going to go first, or is there a better argument? Well, we can certainly start with the fact that binding Ninth Circuit precedent, which the district court failed to apply at all, says that you do not allow side prey unless it's for the next best distribution for the class, that it has to be targeted to the interests of the class. And what we have here is a national class over an allegation of computer privacy violations, and the side prey is going to the Boys and Girls Club of Los Angeles. Well, not all of it. Well, not all of it, but the Federal Judicial Center is also. . . I mean, the Federal Judicial Center got a little bit. And the judge's spouse's charity, the Los Angeles Legal Aid Lafayette. Counsel, what should the procedure be in a case like this? The parties have all agreed that the money of the settlement is going to go to charities. So then, how do we determine which charities are qualified for side prey or soup prey in this circumstance? What should the court have done? Well, it should start with the six Mexican workers test, which says it goes to the next best distribution. And thus, when you have a national class, it goes to a national charity. It doesn't go to a local charity. Just as in six Mexican workers, there is a problem because there is a geographical mismatch between the proposed charity and the identity of the class. There is no evidence that the money would benefit the class at all. Just as in this case, there is no evidence that the money would benefit the class at all. And it's not just that the parties agree, because there's a third party here, the unrepresented class members. And the district court has a fiduciary duty to those unrepresented class members to make sure that the settlement is fair and adequate and reasonable for them. And when you have this unfettered side prey, you get all these conflicts of interest, which you saw in this case and you see in lots of other cases throughout the circuit. Where the money goes to a charity that's related to the plaintiff's attorneys. I asked you directly, what should the court do in this case? The court should apply the six Mexican workers standard. And if it's looking for a more specific standard with a brighter line of guidelines, the American Law Institute sets out the principles of the law of aggregate litigation. So the court would just refuse the settlement until the parties go back, negotiate another settlement, come back with something that maybe I'll accept that. That's exactly right, Your Honor. That's exactly how it should happen. So is it a discretionary decision by the district court as to whether it meets the side prey composible doctrine? I only said that because I know that's the only French I know. You're four words ahead of me, Your Honor. That is a discretionary decision, but first you have to apply the standard. And when you don't apply the standard at all, that is an abuse of discretion as a matter of law. But here, even if the court had said the magic words and said under six Mexican workers I think this is okay, it's clearly not okay under six Mexican workers. You have to target it in some way. And it's not targeting it to say we're giving it to this local Los Angeles charity. There's a national class here, and you don't decide a charity by whether it's in the judge's backyard. And so under Rule 23E, the correct decision of the court should have been first not to preliminary approve it because it clearly couldn't meet that standard. But once you do preliminary approve it and once you have an objector there saying, Your Honor, this doesn't meet Ninth Circuit precedent, you say you're right. I reject the settlement. Come back with one that meets six Mexican workers. And if you want to provide more guidance to district courts, and I think that is a good idea, you can do one of two things. You can say we're not going to have cypre at all. It's just too unworkable. That's one possibility. Or more narrowly, you can say let's follow the American Law Institute standards. You don't have charities that are related to the plaintiff. When you have Google as a defendant, you don't give the money to charities that are lobbying for Google. When you don't give the money to charities that are affiliated with the judge. We just had a settlement approval last week where the judge unilaterally decided that half a million dollars would go to a university which is employing him as a lecturer. There's just enormous potential for ---- But there was, if we go to that issue, which you seem to want to continue to speak about, what we're really talking about is FRCP 23 and notice, aren't we? There's also a notice issue, but that's an independent issue and an independent reason for rejecting the settlement. So you're not worried about the notice issue in this particular case? Well, I am worried about the notice issue. I mean, the problem that I have is that there was notice. Each rep was, the notice was given that each representative of the class would designate a charity to receive $8,750 as part of the settlement. And then class members had a chance to investigate and object to it. And you did. And you're here. Why wasn't that enough notice? I want to emphasize that you can find that the notice was adequate and still find the settlement failed the standard. That's a completely independent issue. But I want to say that there needs to be an obligation. The plaintiff's attorney has a fiduciary duty to the class. They can't be hiding the ball. Well, this plaintiff's attorney didn't hide the ball. He said how it would be distributed. One of the distributions was based on what the judge or the mediator had suggested ought to be distributed. It was the big one to three different ones. And then the others were the class reps would each select one. And that was all notice was given. And you saw it and said, no, we're not going to go for that. We're going to investigate. And I guess that's the notice that was supposed to be. I don't understand where we go first. I want to say we don't know that all the conflicts of interest were disclosed. They didn't disclose this one. We found it by accident on Google. And if the plaintiff happened to have hidden her LinkedIn profile, we never even would have found out that $17,500 was going to her employer where she is the director of development. And that in itself creates a 23-4 problem because it means that the interests of the class representative are divorced from the interests of the class. That you have this wildly, you know, it's a $0 settlement for the class. And $17,500 is going to one of the named plaintiff's employers. And that's not mentioned anywhere in the court filings. It's not mentioned anywhere in the notice. You have to investigate. And if this court... Didn't they give a link to find it? Notice. All the time looking for a listing of the charities. No place did they notice who's going to get the money. There's no... So that to me was a real problem. Just that we did not find what ought to be there. I think that's absolutely right. You had to go on to PACER and you had to look into the court filings to find out. And then you had to do an investigation. Now, if this court wants to make a ruling that objectors have to conduct discovery on every single class action settlement to make sure that the class action attorney isn't misleading the class about whether there are conflicts of interest, you know, we can have that rule. But I think that's highly inefficient. We already have a rule, don't we? It's in Rodriguez. Rodriguez... And it says the notice must be satisfactory, or it is satisfactory, if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. That's the standard. That's the standard. The settlement doesn't meet that standard. And I want to suggest that it's a bad standard because it means that... We don't have any way to get away with this standard, do we? This particular panel, you think we can upset the Rodriguez standard? Well, you can ask the court for whether or not there's any objection. You can say, here's why we think this is a bad standard. It requires objectors to conduct discovery. That's really, really wasteful when it's much easier for the class action attorney to fulfill its fiduciary duty and tell the class what's going on. And, I mean, do we really want all this collateral discovery litigation? That's not fair to the honest class action attorneys who do disclose everything, that they would be subjected to discovery just in case they didn't because under Rodriguez, an objector has to protect their rights by investigating. And, you know, 23C2 says the notice needs to be the best notice practicable. How much more expensive it is to add a sentence, by the way, this is the plaintiff's employer who's going to get the $17,500. And maybe you might want to object to that because, gosh, that's pretty unfair that a plaintiff's employer is getting $17,500 while the class is getting zero. I see I have four minutes left. I don't know if that's... You're kind of flippant with accusing plaintiff's attorneys of being dishonest. I think if a... So you just called them dishonest. They did not disclose a very material fact that the class should have known about. And I think if a defendant had done that in a securities case, they would have brought a litigation against them. I don't see why a class action attorney should be held to a different standard than that. There is no reason not to disclose that other than to preclude people from objection. You're fairly flippant in terms of charging Judge Snyder with dishonesty. I did not charge Judge Snyder with dishonesty. Or her husband with dishonesty. I'm sorry? Or her husband with infamy. I did not charge either of them with dishonesty. I said that they did not meet the refusal standard, which under... And that's a Supreme Court decision that says when you're sitting on the board of a charity and the charity has a substantial interest in the underlying litigation, you can't decide that case. And have they outpaced the charity? I'm sorry? Any board members? That applies to board members. Any board members on that charity? I don't know the answer to that, but that wasn't relevant to the Supreme Court in... I'm sorry. In Lilichburg, where the judge was just one of several board members on the Loyola University board. And the court held that even though Loyola University was not a party, they had a substantial interest in the outcome of the case, and the judge should have recused himself. And that's just a straightforward application of 455B, even if 455B somehow did not apply. And, you know, I don't like recusal arguments. I think they are too... That's not true. I mean, you do like recusal arguments, and you've gone overboard on this one. She doesn't have any financial interest in the settlement. Her husband doesn't own stock in the Legal Aid Society. She doesn't own stock in the Legal Aid Society. He probably is, in terms of what he's done, is he's made some charitable donation of his time to the Legal Aid Society, and you, you know, apparently seek to undermine him, his ethics. Or on some decision, he obviously did... He didn't negotiate the settlement beyond that. He had nothing to do with it. Well, then parties can go and say, we're going to give money to the judge's favor charity, so that they're more likely to approve a settlement. And the judge said that she didn't do that here, but that's not the standard under 455B. And the Supreme Court says that's not the standard under 455B. Even a dollar share of stock is enough to recuse somebody's interest. That's a difference. There's a financial interest if a judge owns a stock. In this case, Judge Snyder didn't own any stock. I agree that Judge Snyder did not own any stock, but that's not... Again, I urge you to read Pilgerberg. The Supreme Court decided exactly this question on a case where it was even more remote than this because the judge didn't even know about the conflict. And they said, I don't care if the judge doesn't know about the conflict. The judge still needed to recuse themselves. I'll save the rest of my time for rebuttal. Thank you. Judge Quinn, could you bring the mic closer to you? I'm having trouble hearing you. Yes. Good morning, Your Honors. This is Mark Litvak for AOL. I will split my time, 12 minutes, 3 minutes, with Mr. Kelner, who is class counsel. Let me start, perhaps, with you, Judge Fletcher, assuming you can hear me okay. I can hear you fine. Thank you. I'm told that is usually not a problem for me. You asked, where in the notice does it say where the money is going? And this notice is different than most notices. This is an electronic notice because you've got to remember, this involves AOL and the use of e-mail. So AOL had the e-mail account for all 60 million class members. So AOL e-mailed all 60 million class members the notice. In that notice, it had the link. And you've got to remember, this is, by definition, a group of people used to using the Internet. And all you had to do was click. And it showed right there, here is the entire settlement agreement. So I respectfully disagree with my opposing counsel who said, you need to go to PACER, you know how to use it. That's just not true. This notice, Your Honor, included the entire settlement agreement with a simple click. I agree, it is outside the norm for that to be provided. But in that settlement agreement, it told you exactly where this money was going. It told you that each of these four named plaintiffs who were subject to discovery, who had discovery taken against them, who had their Internet accounts selected. In fact, in one of the plaintiffs in this case, who is not on appeal here, it was determined would not be a proper class representative and hence was dismissed. So there was discovery taken against these people. I assume, as everyone should assume, that people have different charities and you favor different charities for different reasons. What the parties discussed in the settlement is that these had to be legitimate 501c3 charities. And each of these charities were 501c3 charities. The settlement agreement... Well, Your Honor, let me answer that. Yes, the three major ones were mentioned. The $25,000 larger amounts were specifically listed. The four smaller amounts, dictated by the four named plaintiffs, are in the settlement agreement. They were provided. They're in the settlement agreement, but they're not in the notice. But the settlement agreement is given with the notice. That's what makes this one different. I would respectfully submit you almost don't need to do it. That is, if anyone had a question on the charity, what also makes this notice different than most is via... You've got to remember, we're in the email world here. Via a click, it gave you the two addresses. So you could automatically send questions either to the class administrator or to class counsel. You could go either one of two ways with your questions. So right back, just by hitting reply, by clicking on it, the link would pop up, and you could get an email asking questions. There's not no great discovery taken here. It's set up via the very system at issue here that you could ask questions to class counsel or to the administrator where it would have been shared with us as AOL's counsel. It could have said, answered any question that any of the 60 million people had. And, in fact, out of 60 million people, we had two objectives. My math is not good enough to do that percentage as I sit here now. But I would submit to you it is approximately 59,999,998 people didn't object, never asked questions, thought, okay, this is a fair settlement because what they really got here, this is not a settlement really at the end of the day about money. It was the injunctive relief so that the court understands what happened here is when you sent an email, you would see it, you would type it in, and you would not see the advertisement that AOL would put on the bottom. And so what this settlement did is it obligated AOL to do two things. One, to inform every subscriber to AOL that that was its policy, as long as it would continue that policy, and to make clear instructions available and deliver to all people how to opt out. What's the response on this Cypre issue and specifically with regard to the six Mexican workers case? Very different, very, very different cases. Six Mexican workers is a case that after litigation, the money was decided that it should go to these class members. Because of the nature of the class members after the trial, it was, okay, now how do we do the next best thing to get the money here? This isn't that type of case. This is a case where the party sat down and negotiated a settlement. This isn't Cypre money that was designated for people who now can't get the money. We have to figure out a different way. This court in a case called Enri Sinker ERISA litigation, which Judge Fletcher, you may be, excuse me, not Judge Fletcher, Judge Smith, you may be very familiar with, having written the opinion. I was going to say, if she wrote it, I must have been, I must have got her good stuff. Stressed the importance of settlements and why in class action cases, that is a case, Judge Boone, if you're not familiar with it, where effectively, and Judge Smith knows the facts of law better than I do, the district court found that even though a settlement had been reached, he was going to grant summary judgment and did grant summary judgment. And hence dismissed the class and said, I'm not going to get to the settlement because of summary judgment. And this court said, no. What we want in class actions, this court, and in fact the nation as a whole, and the central district cited there, has a strong policy in favor of settlements. We want people to go work these things out. That's what this group did. The problem comes, and I think this is the biggest problem we have in this particular case, in that Six Mexican Workers pretty well lays out what we believe should guide the objectives of a settlement in these particular situations. And it says, must be guided by the objectives of the underlying statutes and interest of the silent class members. First of all, if I may respect, Six Mexican Workers is not a settlement at all. Well, I understand. But we're talking about Cy Gray in Six Mexican Workers. And as to that doctrine, it says very clearly it should be guided by objectives of underlying statutes and interest of the silent class members. I understand. But I would submit to you it is different when parties individually negotiate a settlement versus money that was intended for class members. Here what you have, Your Honor, you have a settlement. So you're suggesting the Cy Gray doctrine changes based on what happens in a particular case? Your Honor, I am suggesting that in that case the money was specifically designated to go to the class members, and because it could not go, it needed to go, you needed to find the next best thing. Here, given the $75,000 at issue that the parties had negotiated to, and given the 60 million class members, it was understood that we were not going to be able to distribute that to this class as a whole. The economics of it would be a penny and a quarter, and the economics of sending that money would have been astronomical, and hence it was not decided. It was always recognized that the money would not be given to the class. The second thing, Your Honor, is, and that is the question I believe for this court, with all due respect, is, is this settlement as a whole fair? And, Your Honor, for that I point the court to Offices v. Justice v. Civil Service, Hanlon v. Chrysler, and Aggies v. Louisiana Pacific Corp., and I have the sites, but it says that each one, you must look at the totality. You're not, it's not this court's duty, nor the district court's, to examine necessarily rather the individual component parts. What you look is, is the settlement as a whole fair? It is fair here because the injunctive relief obtained, there is no question the counsel fees were reasonable and fair, they're not even up before this court on appeal, that the amounts paid were fair. There's really not a dispute that it should have been higher, lower, whatever. So now, with all due respect, to say, okay, what is the best charity? If that's what the court is now going to get into, is what is the best? I would submit you're going to get in and you will have to be in the rooms negotiating in each settlement. Well, just a minute, just a minute. Your argument, your argument seems very good. In fact, I'll be fair, I look very carefully at this as a total settlement, and I thought that, frankly, the class members got what they wanted in all kinds of other things that they got. But when I look at the PSI PREA doctrine, and I look at what it suggests, and I'm trying to look at what it is, what is its bottom line approach? I guess I'm trying to figure out, if you're going to do a PSI PREA distribution, what does the district court use as an abuse of discretion, or as a discretionary tool in determining what the PSI PREA distribution ought to be? And, frankly, you give me a better case than, in my circuit, six Mexican workers, that suggests what the district court ought to look at. But, Your Honor, that's what I'm saying, is because now, in that case, and that's why I think it is a key distinguishing factor. I understand that I'm not communicating well. There, the money was designated for the class. We understand the distinction. Okay. But in this case, there still is a represented class, and so whether it's people that have been identified and then just simply haven't made a claim, I'm not sure that's such a major difference. Well, Your Honor, what you have here is, I guess, I would believe that parties can reach a settlement and decide where that money should go. What we did here, the problem comes, the problem comes, counsel, and I didn't mean to interrupt you, but the problem comes in very much what counsel has suggested. I've approved a lot of these types of settlements, and I'm representing, if you will, people who aren't there for the settlement. I'm representing this group that aren't there, aren't able to be involved in what happens or why, and so my job is to make sure they're okay and to give notice to them about what they ought to do. Okay. In that particular situation, if, in fact, I'm going to give a Cypre distribution or bless one, what is my standard? Judge Fletcher's question is very good on that. What is my standard? What must I do? And so I look all over in Ninth Circuit law, and there's that six Mexican workers case, very carefully lays out what we do with the standard, even if in a different situation. So where do I go for a different standard? Give it to me, and it seems to me I ought to look at it very carefully. I guess, Your Honor, and I would submit that that is where it becomes the duty of the court to say, you must look at the settlement as the whole, not the individual parts. And when you say, and what you're really now saying is, should the court get in and negotiate, and with all due difference, unless I have the judge in the room with me to say, okay, here is the next best thing, I've determined as a matter of fact, here is the next best thing. You will have the district court judge doing the very thing you, and by you I mean the Ninth Circuit, told him not to do. That is, do not piecemeal the settlement. Because the question of what is the best thing, with all due respect, is a question of fact. Reasonable people may differ. What was chosen here is by a retired federal district judge, Judge Traversian. He said, here are three that to me make sense. The federal judicial center does help on a nationwide basis. I would agree that L.A. Boys and Girls Club is more local. And the third is legal aid. And the idea was, this was not a sum of money that was going to be so significant. But unless you're willing to put judges in each settlement and say, here is the next best thing, you are going to be down to piecemealing settlements. You're saying, go back, try it again, just like you said earlier. Go back, try it again. Go back, try it again. The very thing, it is an abuse of discretion. Judge Snyder believed this was fair. I've left my time for my counselor. Oh, yeah. Thank you, Your Honor. I forgot about him. I did not. I have thick skin, so I won't take offense, even though I guess I've been called dishonest today. So that's a first. I have to tell you that the reality of the situation is something which I think has not been really addressed by counsel, what the settlement is, why it had to go the way it did. You know, we confronted a situation here where we were prosecuting a case to end the practice. We ended the practice. That was our primary intent here. We couldn't get money to each class member because it would be cost prohibitive. If you got one cent, three cent, whatever, it would cost more to administer it. So we had another alternative to put some bite into the defendant, a deterrent, let's say, and do some good and have some charities. We didn't pick the charities. We had Judge Teresian pick the main charities. We disclosed in the notice through the link, because it's all electronic, that the class reps would be making a designation of a small amount of money. Class reps did not get any incentive payment in this case. We did what we thought was appropriate. And I think, Judge Smith, you asked, what's the standard? Because I think that's the big issue for yourself. And I think the standard is an abuse of discretion. The question is, Judge Snyder is looking at these charities and saying, is this appropriate in the context of this case? And that's what I think we have to look at because we're talking about a situation here where there are charities that are being designated as part. Is that fair in the context of the settlement? I see you're ready to ask a question. Okay. That's really my vantage point of what the standard is. I see I've got the red light, so I will abide by the red light. Okay. Unless there are further questions. No. Thank you, Your Honor. Judge Fletcher, question? No. Thank you, Your Honor. Very quickly, I think we have a concession that this settlement cannot meet the six Mexican workers standard. So the question is whether the six Mexican workers apply. And I would say the fact that it's a settlement is a distinction without a difference. It's the same issue. You have a sum of money that, for whatever reason, can't go to individual class members here because it's too small to be divvied up. So it has to go to, under six Mexican workers, the next best distribution, and that has to be targeted to the class. And that did not happen here. And it's very easy for a judge to say at the preliminary stage, this has to meet the six Mexican workers standard. It's very easy for the mediator to say, this has to meet the six Mexican workers standard. And if the parties think about that in advance, there won't be the issue of having to go back and forth. And the reason that they didn't think about it in advance is because the six Mexican workers standard is not being applied, even though the Ninth Circuit commanded it to. I am happy to take your questions otherwise. I think we have well in mind both arguments, and thank you for presenting them to us. Thank you, Your Honor. Court Case 10-55129, Fairchild v. AOL, LLC, is submitted.
judges: Gwin, Fletcher B. , Smith N. R.